Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons,
and Agee, JJ., and Russell, S.J.

WHITE DOG PUBLISHING, INC., ET AL.

v.  Record No. 052333  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    September 15, 2006
CULPEPER COUNTY BOARD OF SUPERVISORS

          FROM THE CIRCUIT COURT OF CULPEPER COUNTY
          Herman A. Whisenant, Jr., Judge Designate


     Three newspaper publishing entities appeal the circuit

court's judgment finding that the Culpeper County Board of

Supervisors (the Board) did not violate the Virginia

Freedom of Information Act, Code §§ 2.2-3700 through -3714

(FOIA), by going into a closed session at its October 5,

2004 meeting.  Because we conclude the Board's closed

session did not fall within the statutory exemption under

Code § 2.2-3711(A)(30) to FOIA's requirement for public

access to meetings, we will reverse the circuit court's

judgment.  We will also reverse the circuit court's

judgment refusing to award attorney's fees and reasonable

costs for another, separate violation of FOIA by the Board.

                 RELEVANT FACTS AND PROCEEDINGS

     For many months prior to the Board's closed meeting at

issue in this appeal, the need for and construction of a

new public high school facility in Culpeper County had been

the subject of considerable public debate and had appeared

on the meeting agendas of both the Board and the Culpeper County School Board (the School Board). The debate centered on differing approaches for expanding Culpeper County's high school capacity and became more intense after a preliminary study by an architectural firm hired by the School Board did not favor the Board's preferred approach.

Eventually, in June 2004, the School Board entered into a contract with SHW Group, LLP (SHW), for the planning, design, and construction of a new high school facility, and for the planning and design of renovations to an existing high school building.[1]  The Board was not a party to this contract.  Because of concerns about how the preliminary study had been conducted and because the Board wanted to receive reports from SHW and talk to its architects directly, the Board decided that it should be a party to the contract.  Thus, the Board sought and obtained an amendment to the SHW contract that, among other things, added Culpeper County as a party to the contract.

After the first contract amendment, the Board continued to be concerned about whether various options for school size and configuration were being diligently pursued.  For that reason, the Board sought and obtained a

---

[1] The record also refers to SHW as "SHW Group, Inc." For purposes of this appeal, the correct name is irrelevant.

second amendment to the SHW contract.  This amendment, in relevant part, directed SHW to

> consider the feasibility of potential additional planning and design options, including new buildings or renovations, any such options required to meet the educational programming and space planning needs of the school division as determined and approved by the School Board, but which may also extend the costs of such new or renovated buildings over a longer period of time than is presently contemplated.

From the Board's viewpoint, the second amendment revised the scope of work under the SHW contract and opened the door to options the Board wanted SHW to consider in planning and designing the new high school facility.

Before going into closed session at its October 5, 2004 meeting, the Board, among other things, approved the second amendment to the SHW contract.  The Board then adopted a 13-item closed session motion that, in relevant part, cited Code § 2.2-3711(A)(30) and listed as one of the reasons for the closed session a discussion "with the County Attorney and staff [about] changes to a specific public contract where public discussion would adversely affect the bargaining and negotiating position of the County."  The motion, and the fact that its wording merely tracked the language set forth in Code § 2.2-3711(A)(30), were typical of all closed session motions drafted by the

3

attorney for Culpeper County, John D. Maddox, and adopted by the Board.

Maddox, however, also prepared a non-public agenda for the closed session. That agenda was more specific than the public, closed session motion adopted by the Board. The non-public agenda contained 12 items for the closed session, one of which was a discussion "with the County Attorney, staff, and consultants [about] a change in the scope of work to be provided by SHW Group, Inc., under the architect's contract and the impact of new data on that change in scope."

Upon returning to open session at the conclusion of the three and one-half hour closed meeting, the Board members certified they had discussed or considered only those public business matters exempt from the open meeting requirements of FOIA, as identified in the closed session motion. In open session, the Board then adopted a motion stating

> that pursuant to the second amendment to the SHW Group, Inc. Agreement, . . . the Board request[s] SHW to review the following options: (1) Using SHW's Option B to create instead of [a] 1,200 expandable[-]student school to create a 1,000 expandable-student school new high school; and (2) to create a 2,400 student high school at the present high school site or two 1,200 student high schools at the same site.

4

About 16 days after the Board's closed meeting at issue, White Dog Publishing, Inc. (White Dog), publisher of The Culpeper Citizen, filed an amended petition for a writ of mandamus in the General District Court of Culpeper County. White Dog alleged that, during the Board's closed session on October 5, 2004, the Board discussed items relating to the proposed construction of a high school in Culpeper County with an architect representing the firm of SHW. Continuing, White Dog asserted that the Board had violated Code § 2.2-3712(A) by

> failing to identify properly the subject matter of the closed session, and to properly state the purpose of the closed session [and] by conducting a closed session because none of the exemptions listed by the Board and, in fact, none of the exemptions found in . . . Code § 2.2-3711(A) justified the closure of the Meeting for the discussion of matters related to the construction of [a] high school.

White Dog sought a writ of mandamus directing the Board to make available for public inspection all minutes, notes, and other information reflecting the discussion held in the closed session and further directing the Board to cease its reliance on the exemptions set forth in Code § 2.2-3711(A) to close meetings that are required to be open to the public. White Dog also sought an award of reasonable costs and attorney's fees pursuant to Code § 2.2-3713(D).

5

After an evidentiary hearing, the general district court concluded that neither the Board's motion to close its October 5 meeting nor the subject matter of the closed session violated the requirements of FOIA. White Dog then appealed to the circuit court pursuant to Code § 16.1-106.

In the circuit court, Media General Operations, Inc., publisher of the Culpeper Star-Exponent, and The Free Lance-Star Publishing Company, publisher of The Free Lance-Star, were granted leave to intervene in the proceeding (collectively, along with White Dog, the publishers). During a de novo proceeding, the circuit court heard evidence from three witnesses. The Board presented testimony from the Culpeper County administrator, Frank T. Bossio, and Maddox. Marla McKenna, a reporter for the Culpeper Citizen, testified on behalf of the publishers. The circuit court also admitted into evidence various documents, including the Board's motion to close its October 5 meeting.

When Bossio and Maddox were asked why, in their respective opinions, the closed session was necessary, both explained that, after the second amendment to the SHW contract, the Board needed to formulate exactly what options for constructing the new high school facility would be explored and presented to the School Board. Bossio

explained that the Board wanted to have the benefit of the "unfettered advice" of the SHW architect so it could use that advice in negotiating with the School Board about the plans for the new high school facility. Bossio believed the architect was "more guarded and less forthcoming" when presenting his views in meetings where School Board officials were present. Thus, Bossio concluded that a closed session of the Board's meeting was necessary in order to have a candid and unrestrained discussion with the SHW architect about the options for the new high school facility.

Maddox further explained that, once those options were established during the closed session, Bossio and the SHW architect would present them to the School Board. In Maddox's words, "[w]e were talking about contract negotiations with the School Board for potentially a third amendment" to the SHW contract. Maddox, however, admitted that, during the closed session, no negotiations between the Board and SHW occurred with regard to the SHW contract.

McKenna had attended the Board's October 5 meeting as a reporter for the Culpeper Citizen. She testified that the motion to go into closed session did not mention the SHW contract. Because she did not know there would be any business at the Board's meeting relating to the new high

school or its construction, she left the meeting when the Board went into closed session.

The day after the closed session at issue, the SHW architect prepared and transmitted to Bossio a memorandum summarizing the discussions that occurred during that session.  Bossio asked Maddox to review the memorandum, and upon doing so, Maddox requested that the first three paragraphs be deleted because he believed the document might be subject to disclosure under FOIA and those three paragraphs could potentially embarrass the School Board. In pertinent part, the memorandum stated, "the purpose of the meeting was to clarify the Board of Supervisor[s'] intent regarding the scope of services being requested by the second amendment to SHW's contract with the School Board."[2]

At the conclusion of the evidentiary hearing, the circuit court held that the Board violated FOIA "by making a motion in open session that failed to meet the requirements of [Code] § 2.2-3712(A) before closing the

---

[2] On brief, the publishers discuss a FOIA request by the Culpeper Star-Exponent for any records or minutes of the Board's closed session.  As the Board notes, any alleged violation of FOIA arising from that request was neither pled by the publishers nor ruled on by the circuit court.

October 5, 2004 meeting."[3]  The circuit court, however, concluded that the Board had not violated FOIA by closing its October 5, 2004 meeting pursuant to Code § 2.2-3711(A)(30).  The court reasoned that, since the Board was a party to the SHW contract, it was appropriate for the Board to go into closed session to discuss the scope of the contract and the Board's strategy.  Even though the circuit court had found one violation of FOIA by the Board, the court refused to award attorney's fees and reasonable costs to the publishers.  The circuit court concluded that, under

---

[3] Code § 2.2-3712(A) states:
     No closed meeting shall be held unless the public body proposing to convene such meeting has taken an affirmative recorded vote in an open meeting approving a motion that (i) identifies the subject matter, (ii) states the purpose of the meeting and (iii) makes specific reference to the applicable exemption from open meeting requirements provided in § 2.2-3707 or subsection A of § 2.2-3711.  The matters contained in such motion shall be set forth in detail in the minutes of the open meeting.  A general reference to the provisions of this chapter, the authorized exemptions from open meeting requirements, or the subject matter of the closed meeting shall not be sufficient to satisfy the requirements for holding a closed meeting.

The circuit court's conclusion that the Board's closed meeting motion violated this statutory provision is not challenged in this appeal.  See Nageotte v. Board of Supervisors of King George County, 223 Va. 259, 266, 288 S.E.2d 423, 426 (1982) (FOIA exemption at issue required the purpose of a public body's closed session be identified with the applicable item of business on the meeting agenda).

9

Code § 2.2-3713(D), "special circumstances [made] such an award unjust."  The publishers appeal from the circuit court's judgment.

ANALYSIS

One of the purposes of FOIA is to "ensure[] the people of the Commonwealth . . . free entry to meetings of public bodies wherein the business of the people is being conducted."  Code § 2.2-3700(B); see also Tull v. Brown, 255 Va. 177, 182, 494 S.E.2d 855, 857 (1998); City of Danville v. Laird, 223 Va. 271, 276, 288 S.E.2d 429, 431 (1982).  To achieve that purpose, the General Assembly has directed that the provisions of FOIA "be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government."  Code § 2.2-3700(B).  In addition, "[a]ny exemption from public access to . . . meetings shall be narrowly construed and no . . . meeting [shall be] closed to the public unless specifically made exempt pursuant to [FOIA] or other specific provision of law."  Id.  In deciding the issues presented in this appeal, we are bound by these principles.

When the Board went into the closed session at its October 5, 2004 meeting, it relied upon the exemption to FOIA's requirement of public access to meetings set forth

10

in Code § 2.2-3711(A)(30).  That subsection permits a public body to hold a closed meeting for the purpose of a "[d]iscussion of the award of a public contract involving the expenditure of public funds, including interviews of bidders or offerors, and discussion of the terms or scope of such contract, where discussion in an open session would adversely affect the bargaining position or negotiating strategy of the public body."  Id.  In the publishers' view, this exemption permits a closed meeting only when a public body is discussing or negotiating the award of or amendment to a public contract if such discussion would adversely impact the public body's bargaining or negotiating position.  The publishers argue that "the availability of the exclusion ceases when the process of bargaining or negotiating with the vendor concludes" because the purpose of the exemption is "to protect the public purse during the competitively-sensitive stages of procurement."

The Board, however, has a different interpretation of the exemption.  It argues that Code § 2.2-3711(A)(30) identifies two distinct types of discussions that can occur in a closed meeting: (1) discussion of the award of a public contract; and (2) discussion of the terms and scope of a public contract.  According to the Board, the second

11

type of discussion allows a public body to close a meeting in order to "develop a bargaining position or negotiating strategy about the application, enforcement or modification of a particular contract's terms and scope."  To the extent the Board asserts that this exemption allows a closed meeting discussion relating to the post-award "application" or "enforcement" of a public contract, we do not agree.

In construing statutory language, we are bound by the plain meaning of clear and unambiguous language.  Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001).  We do not isolate particular words or phrases but, instead, examine a statute in its entirety.  Ragan v. Woodcroft Vill. Apartments, 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998).  "The purpose for which a statute is enacted is of primary importance in its interpretation or construction." Norfolk S. Ry. Co. v. Lassiter, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952); accord Virginia Elec. & Power Co. v. Board of County Supervisors of Prince William County, 226 Va. 382, 388, 309 S.E.2d 308, 311 (1983).

The unambiguous language in Code § 2.2-3711(A)(30), viewed in its entirety, demonstrates that the purpose of the exemption is to protect a public body's bargaining position or negotiating strategy vis-à-vis a vendor during the procurement process.  Under that exemption, the terms

12

or scope of a public contract are proper subjects for discussion in a closed meeting of a public body only in the context of awarding or forming a public contract, or modifying such contract, and then only when such discussion in an open meeting would adversely affect the public body's bargaining position or negotiating strategy regarding the contract. Contrary to the Board's position, the exemption does not allow a public body to close a meeting in order to discuss the application or enforcement of the scope or terms of a previously awarded public contract. The Board's view of the exemption would allow <u>any</u> discussion about the scope or terms of an awarded contract to occur during a closed session if the discussion would adversely affect some aspect of the Board's bargaining position or negotiating strategy. The Board does not limit the exemption to discussions involving procurement. Such an expansive interpretation of Code § 2.2-3711(A)(30) would be inconsistent with the General Assembly's directive that an exemption to FOIA's requirement of open meetings be narrowly construed. Code § 2.2-3700(B).

The Board, nevertheless, argues the circuit court correctly determined that the Board did not violate FOIA by closing its October 5 meeting pursuant to Code § 2.2-3711(A)(30). According to the Board, the evidence proves

13

the Board "was positioning itself to negotiate the scope of SHW['s] Architects' contract with the School Board." Continuing, the Board argues that the evidence demonstrated its need for a private discussion with the SHW architect in order to "get his candid analysis of the options that might be included in the scope of his contract and his assistance in convincing the School Board to agree to a scope of work that addressed the . . . Board's concerns."

We agree that the evidence did indeed prove exactly what the Board now contends. But, the Board's purpose in closing its October 5 meeting was not one that is allowed under the exemption contained in Code § 2.2-3711(A)(30). As admitted, the Board was discussing its strategy in relation to the School Board due to the policy dispute between those two public bodies about the new high school facility. The Board was not discussing changes in the terms or scope of the SHW contract vis-à-vis the vendor. Indeed, Maddox admitted that no negotiations with SHW occurred during the closed session. In other words, the purpose of the Board's closed meeting was not for forming or modifying a procurement contract.

Thus, we conclude the circuit court erred in finding the Board did not violate FOIA by closing its October 5, 2004 meeting under Code § 2.2-3711(A)(30). That

14

conclusion, along with the circuit court's unchallenged finding that the Board's closed session motion violated Code § 2.2-3712(A), means the publishers "substantially prevail[ed] on the merits of the case."[4] Code § 2.2-3713(D). Therefore, they are entitled to an award of attorney's fees and reasonable costs "unless special circumstances would make an award unjust." Id.

In light of our holding, we must address the circuit court's refusal to award attorney's fees and reasonable costs to the publishers. Although the circuit court concluded the Board's closed session motion violated Code § 2.2-3712(A), the court refused to award attorney's fees and reasonable costs to the publishers because "special circumstances" made such an award unjust. Code § 2.2-3713(D). The circuit court did not specify what the special circumstances were but reached that conclusion for the reasons stated in the Board's memorandum opposing an award of attorney's fees. The special circumstances asserted by the Board in that memorandum were: (1) the Board's procedure to close a meeting has been followed for

_____

[4] Since the publishers have now prevailed on all issues, it is not necessary to decide whether they would have "substantially prevail[ed] on the merits of the case" if the Board's sole FOIA violation had been its failure to follow the requirements of Code § 2.2-3712(A) with regard to its closed meeting motion.

15

four years and no one has previously complained; (2) the violation was not willful and knowing; (3) the general district court's ruling in favor of the Board on all issues and the lack of precedent on the precise issues presented demonstrate that reasonable attorneys and judges can disagree on the statutory requirements for a motion to close a public meeting; (4) the extensive research on FOIA and its requirements by Maddox; and (5) the closed meeting motion did not release the Board from its other obligations under FOIA as shown by the non-public agenda the Board followed during the closed meeting.

Based on the record before us, none of those grounds constituted "special circumstances" sufficient to make an award of attorney's fees and reasonable costs unjust in the circumstances of this case. We will therefore remand this case for a determination of an award of attorney's fees and reasonable costs to the publishers in accordance with Code § 2.2-3713(D).

CONCLUSION

For the reasons stated, we conclude the Board violated FOIA by closing its meeting on October 5, 2004. The Board's purpose for the closed session did not fall within the exemption set forth in Code § 2.2-3711(A)(30). We further conclude the circuit court erred in finding that,

although the Board's motion to close its meeting violated FOIA, special circumstances made an award of attorney's fees and reasonable costs unjust under Code § 2.2-3713(D). Thus, we will reverse the judgment of the circuit court and remand for issuance of a writ of mandamus and the determination of an award of attorney's fees and reasonable costs to the publishers.

<u>Reversed and remanded</u>.
