# CIRCUIT COURT OF FAIRFAX COUNTY

Jill DeMello Hill

v.

Fairfax County
School Board

July 13, 2011

Case No. CL-2011-2345

By Judge Leslie M. Alden

The matter came before the Court on a complaint filed by Jill DeMello Hill, seeking mandamus relief against the Fairfax County School Board ("Board") for violation of the Virginia Freedom of Information Act ("FOIA" or the "Act"), Va. Code § 2.2-3700 *et seq.* Ms. Hill alleges that the Board violated the Open Meeting provisions of the Act, codified in §§ 2.2-3707, 2.2-3708, by conducting a secret meeting through several e-mail exchanges in the days leading up to its vote to close Clifton Elementary School ("CES") and by not informing the public that a member was participating in a public meeting via electronic means while she was out of town. Ms. Hill also alleges that the Board violated the Act by failing to produce complete publicly available documents in a timely manner in response to her request. Her prayer for relief includes a request for an order requiring the Board to make its deliberations public and hold a new meeting regarding the closing of CES.

After considering the evidence presented at trial, the post-trial briefs, and the relevant law, the Court finds that the Board did violate the Act by

failing to timely produce documents. However, the Court concludes that the Petitioner did not substantially prevail on the merits of the claim in that the Court finds that the Board members' exchange of e-mails prior to its meeting did not violate the Act's Open Meeting provisions, and Ms. Reed's participation in a meeting does not warrant mandamus or injunctive relief.

*Factual Background*

The evidence showed that, in a public meeting held on July 8, 2010, the Board voted to close CES. In the weeks leading up to this meeting, the members of the Board exchanged several e-mails related to the closing of CES. The majority of these e-mails were sent between two Board members at a time, and those that were addressed to multiple members did not generate responses to the group as a whole.

One Board member, Patricia Reed, watched a live stream of part of the July 8th meeting online while she was out of town in Colorado. Ms. Reed was not identified as being one of the members who was present at the meeting. She did not vote on any issue before the Board, and there was no evidence to suggest that members knew Ms. Reed would or intended to contact them while the meeting was in session. However, during the meeting, Ms. Reed forwarded to the Board's clerk an e-mail that had been sent already to all Board members and contained a report on water quality at CES, a factor in the decision to close the school. In her e-mail, Ms. Reed asked the clerk whether the report should be posted on the county's web site. The report on water quality at CES was discussed at the meeting, and the report was posted on the county's web site the next day.

On July 19, 2010, Ms. Hill submitted to the Board a number of FOIA requests seeking information about its decision to close CES. She received many of the documents she requested on August 16, 2010, with a statement indicating that some of the documents were redacted or withheld pursuant to the exemptions in the Act. Though Ms. Hill originally requested the documents in electronic form, the Board mailed hard copies. Additionally, the Board demanded that Ms. Hill pay a fee of $178.36 before processing her request. Because she did not receive some of the documents she originally requested, Ms. Hill further clarified her request on October 20, 2010, and received most of those documents in November. On January 13, 2011, shortly after Ms. Hill commenced this action with the Court, the Board voluntarily produced six more documents.

On January 21, 2011, Ms. Hill submitted her second FOIA request. After some clarification that was resolved by February 4, 2011, she received documents in response to her request. Many of the documents were redacted and withheld properly pursuant to FOIA exemptions; however, after Ms. Hill challenged the withheld documents in court, the Board voluntarily

produced thirty-three of them in full and eight in part and was directed by the Court to produce five additional documents.

On March 2-3, 2011, the Court held a two-day bench trial; the Court heard extensive evidence from both parties pertaining to the issues described above.

## Legal Analysis

### I. Burden of Proof

The parties disagree as to which carries the burden of proof in this action. Ms. Hill cites the section of the Act regarding enforcement, while the Board relies on the common law principle that the plaintiff must prove her case by a preponderance of the evidence. Va. Code Ann. § 2.2-3713(E); *Richmond F. & P. Corp. v. Little*, 247 Va. 309, 318, 440 S.E.2d 908 (1994). The Court concludes that each party bears a burden of proof but with respect to separate issues.

The Board has the burden of proving that it did not violate the Act. Section 2.2-3713(E) states, "in any action to enforce the provisions of [the Freedom of Information Act], the public body shall bear the burden of proof to establish an exemption by a preponderance of the evidence." Virginia law states that when a statute is expressed in clear language, it should be interpreted in accordance with that language. *City of Virginia Beach v. ESG Enterprises, Inc.*, 243 Va. 149, 152-53, 413 S.E.2d 642 (1992). The present case is an action to enforce the Act. All actions that do not comply with the Act are either exemptions or violations. Therefore, the Board in this case must be attempting to establish an exemption. Section 2.2-3700 further supports this idea by stating, "Any exemption from public access to records or meetings shall be narrowly construed," implying that, to be within the law, records must be either produced or exempt.

Though the Board cites *Richmond F. & P. Corp. v. Little* as evidence that the plaintiff bears the burden of proof, that case is not controlling as to whether an exemption was established. The issue in *Richmond F. & P. Corp.* was whether to require a higher standard of proof when meting out penalties under the Act, and the court did not discuss exemptions. 247 Va. at 317-19. However, *Richmond F. & P. Corp.* correctly stands for the proposition that the plaintiff bears the burden of proving by a preponderance of the evidence that the defendant's violation was willful and knowing. *Id.* at 320. Therefore, while the Board must prove that its conduct was subject to an exemption, Ms. Hill bears the burden of showing that the Board's violations were intentional.

## II. *Consecutive E-mails as an Assemblage under the Act*

Ms. Hill alleges that the e-mails exchanged by the Board in the days leading up to the July 8th meeting constituted an informal meeting under the Act. The Court disagrees.

The Act defines a "meeting" as "meetings, including work sessions, when sitting physically, or through telephonic or video equipment . . . as a body or entity, or as an informal assemblage of as many as three members. . . ." Va. Code Ann. § 2.2-3701. Because the Board's activity involved e-mail communications, the issue here is that which was addressed in *Beck v. Shelton*, to wit, whether serial e-mails constituted an "assemblage" under FOIA. 267 Va. 482, 490, 593 S.E.2d 195 (2004). The court in *Beck* held that "virtually simultaneous interaction" is required for e-mail to be considered a meeting. *Id.* at 489.

Although the e-mails in the present case were sent in much shorter intervals than the e-mails sent in *Beck*, the e-mails sent by Board members did not involve sufficient simultaneity to constitute a meeting. The e-mails were used consecutively, rather than co-operatively, and the members never reached any sort of group consensus or discussed business as if they were sitting in a room, virtual or real, chatting with each other.

The cases Ms. Hill cites are not analogous to the present case. *District Attorney v. School Community of Wayland*, for example, involved a conscious attempt to avoid having any public meeting on the subject at hand. 455 Mass. 561, 918 N.E.2d 796, 804 (2009). *See also Blackford v. School Board of Orange County*, 375 So. 2d 578, 580-81 (Fla. App. 1979) (forcing a reconsideration of board's decision to close a school because members willfully circumvented the Sunshine Law). Other cases cited by Ms. Hill held that an exchange of e-mails or one-on-one telephone calls *may* be considered meetings if there is a collective intent to discuss or resolve a public issue. *Wood v. Battle Ground School Dist.*, 107 Wash. App. 550, 27 P.3d 1208, 1217 (2001) (citing *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 20 Cal. Rptr. 2d 330, 853 P.2d 496, 503 (1993) (a meeting requires "a concerted plan to engage in collective deliberation")); *see also Stockton Newspapers, Inc. v. Redevelopment Agency of the City of Stockton,* 171 Cal. App. 3d 95, 101, 214 Cal. Rptr. 561 (1985) (Brown Act requires a meeting to involve a "collective commitment . . . to make a positive or negative decision"); *Del Papa v. Board of Regents*, 114 Nev. 388, 956 P.2d 770, 778-79 (1998) ("The constraints of the open meeting law apply only where a quorum of a public body, *in its official capacity as a body* deliberates toward a decision or makes a decision." (emphasis in original)).

In the present case, there was no evidence of a collective intent on behalf of any three members or the Board as a whole to move toward a decision outside of the context of a public meeting. The attempts of a few members to discover others' positions were not the collective actions of the

group and were well within FOIA's Open Meeting provisions. *See* Va. Code Ann. § 2.2-3710(B) (rule prohibiting votes outside of public meetings does not prohibit "separately contacting the membership, or any part thereof, of any public body for the purposes of ascertaining a member's position with respect to the transaction of public business . . . provided that the contact . . . does not constitute a meeting"). Board members were free to express or to change their positions at any time before or during the public meeting. Furthermore, the e-mails sent to more than two Board members at one time conveyed information unilaterally, in the manner of an office memorandum. These messages did not generate group conversations or responses with multiple recipients. Instead, the Board's e-mails that involved some sort of back-and-forth exchange were between only two members at a time, rather than the three required for any gathering to be considered a meeting under the Act. *See* Va. Code Ann. § 2.2-3701.

The same principle applies to telephone or in-person conversations among Board members. The evidence did not show that three or more members participated in conference calls or face-to-face meetings. Also, there was no evidence to support the argument that the Board intended to circumvent the Act and come to a private decision through successive meetings or telephone calls.

Accordingly, the Court concludes that communications between Board members in the days leading up to the vote to close CES did not constitute a meeting and that individual attempts to ascertain other members' positions on the issue do not violate FOIA's Open Meeting provisions.

### III. *Remote Participation in the Meeting*

The Court concludes that Ms. Reed participated in the July 8th meeting without informing the public in violation of §§ 2.2-3707 and 2.2-3708 of the Act. Ms. Reed was viewing a live stream on her computer in Colorado, so she was aware that a meeting was in session when she contacted the Board. Therefore, Ms. Reed's e-mail during the meeting operated differently from the consecutive e-mails exchanged before the meeting. Her e-mail was an effort to communicate with the rest of the Board. Although she sent the e-mail only to one person, the fact that everyone was together and able to respond collectively distinguishes Ms. Reed's e-mail from those sent prior to the meeting.

The Open Meeting provisions codified in the Act allow a public body to conduct part of a public gathering electronically if the body follows particular procedures, including proper notice that a Board member will be attending remotely. *See* Va. Code Ann. § 2.2-3708(B). Here, there was no notice of Ms. Reed's attendance. Had the Board provided the requisite three days' notice that Ms. Reed would be attending remotely, there may not have been a violation. Va. Code Ann. § 2.2-3708(C).

However, Ms. Reed's participation in the meeting was *de minimis* and appeared to have no impact on the actions taken. She did not vote or express her opinion about the closing of CES or any other substantive issue during the meeting. Additionally, there was no evidence that the Board had knowledge of her intent to participate, and it appears that some members were not aware of her involvement.

The e-mail that Ms. Reed forwarded to the other Board members referred to a water quality report that all Board members received independently at or about the time the meeting began. Although testimony is contradictory as to whether the Board received the initial e-mail containing the water quality report before or after the meeting began, it was received at or about that time. The evidence was clear that Board members were aware of the water quality report irrespective of Ms. Reed's effort. The fact that the Board did not post the water quality report during the meeting, however, did not constitute a violation of the Act. The evidence showed that the report was identified and discussed by the Board, in sufficient detail, during the meeting to inform the public of its character and its contents. Therefore, the Court concludes that this document was constructively made available to the public at that time.

## IV. *Compliance with Freedom of Information Act Requests*

The Court finds that the Board failed to comply in a timely manner with some of Ms. Hill's document requests pursuant to the Act.

As the Court previously ruled, the superintendent of schools is a chief executive officer for purposes of the Act, and his "working papers and correspondence" may be exempt from disclosure under the Act. Va. Code Ann. § 2.2-3705.7(2). The Office of the Attorney General "has consistently held that, for the purposes of the Act, school boards are political subdivisions and superintendents are their chief executive officers." 1982 Va. Op. Att'y Gen. 729, 1982 Va. AG LEXIS 97. However, the relevant section goes on to state: "No record, which is otherwise open to inspection under [the Act] shall be deemed exempt by virtue of the fact that it has been attached to or incorporated within any working paper or correspondence." *Id.* In the present case, many of the e-mails withheld were between Board members, and the Superintendent was merely copied as a recipient. E-mails between Board members are open to inspection. The fact that the Superintendent received or read a copy of these e-mails does not qualify them as part of his working papers or correspondence within the meaning of the Act. Such e-mails do not reflect the work of the Superintendent, nor do they evidence communications intended only for the Superintendent. Those e-mails, therefore, should have been disclosed.

Additionally, as ruled upon by the Court before trial, the five documents relating to volunteers which were held not to fall under the exception for

personnel files (§ 2.2-3705.1(1)) should have been disclosed with the original documents. Furthermore, the delay in the disclosure of documents that were produced voluntarily contravenes the requirements of the Act. Section 2.2-3704(B) requires all available requested documents to be produced within five working days. Also, documents should be produced in any tangible medium identified by the person making the request, including e-mail, that is used in the ordinary course of business. § 2.2-3704(G).

Because the Board demanded that Ms. Hill pre-pay the fee before it began processing her July request, and because it chose to send files to Ms. Hill via U.S. Mail instead of electronically, Ms. Hill belatedly received her documents almost one month after her request. Even taking into account reasonable administrative delays and confusion over fees, the Board exceeded the time provided for its response. Additionally, the Board was inefficient in conducting its business with Ms. Hill through regular mail. Ms. Hill's communication involving her request was electronic, and she explicitly requested electronic copies of all documents. Ms. Hill requested the Board's e-mail communications, which originate in electronic form, and the Board responded to her requests electronically. This indicates that the electronic production of documents was within the Board's regular course of business under § 2.2-3704(G). Further, the Board also filled Ms. Hill's January request late, even after accounting for its request for clarification and payment.

The fee for producing the documents was calculated to be $178.36. The Act allows a public body to charge a requester in advance only if the cost of producing the records is likely to exceed $200. § 2.2-3704(H). The Board admits to violating this section of the Act, though not intentionally.

Despite the noted violations, the Board was justified in withholding and redacting the numerous documents which qualified pursuant to exemptions under the Act. These exemptions include personnel records (other than the volunteer records) (§ 2.2-3705.1(1)), scholastic records (§ 2.2-3705.4(1)), and legal advice and attorney work product (§ 2.2-3705.1(2)). Considering the voluminous records provided and the substance of the documents improperly withheld, the Court finds the violations, although frustrating and vexing, ultimately *de minimis*.

## V. *Remedies Available to Petitioner*

Ms. Hill seeks an order requiring production of all documents she originally requested from the Board. At this time, barring those documents rightfully withheld or redacted, Ms. Hill has received everything she asked for; this issue is moot.

Ms. Hill also requests that the Court order the Board to hold a second meeting to reconsider closing CES. Injunctive relief is an "extraordinary and drastic remedy" and is generally only granted when there is a willful,

knowing, and substantial violation of the Act. *Hale v. Washington County School Board*, 241 Va. 76, 81-82, 400 S.E.2d 175 (1991); *Nageotte v. Board of Supervisors*, 223 Va. 259, 270, 288 S.E.2d 423 (1982). The Petitioner has not carried her burden on this issue. Evidence of violations of the sort found here is insufficient to show a knowing and willful intent to keep information from Ms. Hill or from the public, nor can any such intent be inferred under FOIA. Further, the Court concludes that the failures by the Board were not substantial. The actions of the Board or its members did not influence the outcome of the vote to close CES or affect the public's ability to be informed of and participate in a decision that affected the community. It should be noted that, in a separate case, the Court previously ruled upon the validity of the Board's decision. *Armendaris v. Fairfax County School Board*, CL-2010-11240 (Va. Cir. Dec. 1, 2010). The Supreme Court declined to issue a writ in that case. *Armendaris v. Fairfax County School Board*, CN-110365 (Va. June 2, 2011). No evidence adduced in this case persuades the Court that the previous rulings should be disturbed.

Ms. Hill also seeks costs and attorneys' fees incurred in this action. A Court may order the payment of attorneys' fees in actions pursuant to the Act when a petitioner "substantially prevails on the merits of the case." Va. Code Ann. § 2.2-3713(D); *see also White Dog Pub., Inc. v. Culpeper County Board of Supervisors*, 272 Va. 377, 388, 634 S.E.2d 334 (2006). In the present case, however, the Court concludes that Ms. Hill did not substantially prevail on the merits of the case. Although the Court recognizes that the Board did violate the Act in the ways discussed herein, this case is distinguishable from *White Dog Publishing*. The gravamen of Petitioner's claim, that the Board met secretly by e-mail and that the decision to close CES should be set aside, was rejected by the Court. Therefore, under the circumstances of this case, it would be unjust to order the Board to pay Ms. Hill's costs and fees. *See* Va. Code Ann. § 2.2-3713(D).

### Conclusion

For the aforementioned reasons, the Court concludes that, although the Board violated some provisions of the Act, Ms. Hill is not entitled to the extraordinary remedy of mandamus or injunction by requiring a new vote on whether to close CES. All properly requested documents have been made available, and the Board need not take further action. The petition for a writ of mandamus is denied.