COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Malveaux and Frucci
Argued at Richmond, Virginia


VIRGINIA DEPARTMENT OF CORRECTIONS

MEMORANDUM OPINION* BY
v.        Record No. 1626-24-2              JUDGE STEVEN C. FRUCCI
                                            OCTOBER 28, 2025

INSIDER, INC., ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Claude V. Worrell, II, Judge

Margaret Hoehl O'Shea, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellant.

Lin Weeks (Gabriel Rottman; University of Virginia School of Law
First Amendment Clinic, on briefs), for appellees.


This appeal arises from Insider, Inc., Hannah Beckler, and Ian Kalish's (collectively

"Insider") petition for writ of mandamus pursuant to the Virginia Freedom of Information Act

("VFOIA").  Insider sought video and audio recordings from the Virginia Department of

Corrections ("VADOC") in which a canine bit or "engaged" an inmate at Red Onion State Prison

from January 1, 2017, to December 31, 2022, in addition to bite reports and incident reports of 12

specific incidents.  After two hearings and reviewing the records in camera, the circuit court granted

Insider's petition but permitted VADOC to exercise its discretion in redacting portions of the

records.  For the following reasons, this Court reverses the judgment of the circuit court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

On February 18, 2022, Beckler submitted a VFOIA request to VADOC seeking "all video and audio recordings of all uses of force involving a canine at Red Onion State Prison . . . from January 1, 2021 through December 31, 2021," and "[a]ll 'bite reports'"[1] recorded in the Dog Information Governance and Operation System "from January 1, 2017 to the present."

On March 8, 2022, VADOC denied Beckler's request, citing Code §§ 2.2-3706(B)(4) and 2.2-3705.2(14) as exempting the requested records from disclosure. In response, on June 17, 2022, Insider served VADOC with an intended petition for writ of mandamus, along with a letter resubmitting the request for the records and arguing why the cited exemptions were inapplicable to the requested records.

Following a series of negotiations, on March 13, 2023, the parties came to an agreement in which VADOC would "release redacted records responsive to the 'Bite Report Request.'" The redacted information would be "identifying information" of the officers and inmates involved in the incidents and any medical records or photographs corresponding to those inmates. In return, Insider agreed to not file the petition for writ of mandamus and "any claims relative to the February 18, 2022 and June 17, 2022 [V]FOIA requests will be deemed settled." In addition, the parties agreed that the agreement "does not bind or constrain the parties as to any other or future [V]FOIA requests" served on VADOC.

On April 19, 2023, Insider submitted another VFOIA request, requesting the following records: "[a]ll video and audio recordings in which a VADOC canine bit or otherwise 'engaged' an inmate at Red Onion State Prison from January 1, 2017 to December 31, 2022"; "[a]ll video and audio recordings taken inside VADOC facilities that VADOC . . . submitted to a state or federal

---

[1] Bite reports are records created by canine officers if the "utilization of a DOC canine results in a bite."

court as a party in any legal proceeding from January 1, 2017 to December 31, 2022"; and "[a]ll bite reports and internal incident reports"[2] of 12 specifically identified incidents.

On May 8, 2023, VADOC denied Insider's request, stating that the records were exempt from disclosure and that some of the requested records had already been produced pursuant to their agreement less than two months prior.

On January 26, 2024, Insider provided VADOC with a copy of a petition for a writ of mandamus before filing said petition on February 1, 2024. In its petition, Insider sought "[a]ll video and audio recordings in which a VADOC canine bit or otherwise 'engaged' an inmate at Red Onion State Prison from January 1, 2017 to December 31, 2022," and "[a]ll bite reports and internal incident reports" of 12 specific incidents.

On February 14, 2024, the circuit court held a hearing on the petition. At the hearing, VADOC argued that multiple exemptions under VFOIA applied, thereby excluding the records from mandatory disclosure. In addition, VADOC argued that Insider was precluded from requesting the records that were encompassed by the parties' March 2023 agreement. Insider contended that they did not receive all the bite reports that were requested, but VADOC called Gabriel Fulmer, who was a FOIA officer for VADOC at the time of the requests, and he testified that he sent Insider "every single bite log we had." Insider argued that there were 12 specific bite reports that were not released but otherwise did not counter Fulmer's assertion with any evidence. At the conclusion of the hearing, the circuit court directed VADOC to submit the requested records for in camera review.

---

[2] Incident reports are "records generated when there is an incident that needs to be logged" pursuant to the operations of the prison. The incident reports are electronically maintained in the VDOC internal database and reference a specific inmate related to a specific incident within the prison.

After reviewing the records in camera, the circuit court granted the petition for writ of mandamus but permitted VADOC to exercise its discretion in redacting portions of the records. VADOC appeals, and Insider raised cross-error.

ANALYSIS

"Whether documents . . . should be excluded under [VFOIA] is a mixed question of law and fact." *Hawkins v. Town of S. Hill*, 301 Va. 416, 424 (2022) (alterations in original) (quoting *Va. Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015)). "[W]e give deference to a trial court's factual findings and view the facts in the light most favorable to the prevailing part[y]." *Id.* (alterations in original) (quoting *Surovell*, 290 Va. at 262). "However, this Court 'reviews issues of statutory interpretation and a circuit court's application of a statute to its factual findings, de novo.'" *Id.* (quoting *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 636 (2020)).

"The General Assembly enacted VFOIA to 'ensure[] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees.'" *Id.* (alteration in original) (quoting Code § 2.2-3700(B)). "Under VFOIA, '[e]xcept as otherwise specifically provided by law, all public records shall be open to citizens of the Commonwealth . . . during the regular office hours of the custodian of such records.'" *Id.* (alterations in original) (quoting *Bergano v. City of Virginia Beach*, 296 Va. 403, 408 (2018)). "By its own terms, the statute puts the interpretative thumb on the scale in favor of disclosure: 'The provisions of [VFOIA] shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government.'" *Id.* at 424-25 (2022) (alteration in original) (quoting *Fitzgerald v. Loudoun Cnty. Sheriff's Off.*, 289 Va. 499, 505 (2015)). "Moreover, '[a]ny exemption from public access to records . . . shall be narrowly construed and no record shall be withheld . . . unless specifically made exempt pursuant to this chapter.'" *Id.* at 425 (alterations in original) (quoting Code § 2.2-3700(B)).

I.  The surveillance videos and incident reports are exempt under Code § 2.2-3706(B)(4).

"This Court's role in interpreting a statute is a narrow one." *Id.* "In construing statutory language, we are bound by the plain meaning of clear and unambiguous language." *Id.* (quoting *White Dog Publ'g, Inc. v. Culpeper Cnty. Bd. of Supervisors*, 272 Va. 377, 386 (2015)). "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." *Id.* (quoting *Couplin v. Payne*, 270 Va. 129, 137 (2005)).

Code § 2.2-3706(B)(4) excludes from mandatory disclosure "[a]ll records of persons imprisoned in penal institutions in the Commonwealth provided such records relate to the imprisonment."

As evident by the plain language of the statute, the legislature has made clear that "*all* records of persons imprisoned" be excluded from mandatory disclosure, so long as "such records relate to the imprisonment." *Id.* (emphasis added).  Imprisonment is defined as (1) "[t]he act of confining a person, esp. in a prison;" (2) "[t]he quality, state, or condition of being confined;" or, (3) [t]he period during which a person is not at liberty." *Imprisonment*, *Black's Law Dictionary* (12th ed. 2024).  Here, the surveillance videos at issue document prisoners' interactions while imprisoned, particularly their interactions leading up to and including being engaged by a VADOC canine. These records can fairly be described as relating to the prisoners' confinement or "quality, state, or condition of being confined," as they are videos saved and maintained to document inmates' activity during their imprisonment.[3]  Because the statute is clear and unambiguous, and because the surveillance videos relate to the imprisonment, they are records specifically made exempt under Code § 2.2-3706(B)(4).

---

[3] Although the video surveillance is constantly recording, the videos sought here were specially trimmed and saved to document the inmates' interactions with the VADOC canine.

Further, we reject Insider's contention that "imprisonment" under Code § 2.2-3706(B)(4) unambiguously means "the sentence," and we disagree that this Court in its decision in *National Public Radio v. Virginia Department of Corrections*, No. 1669-23-2 (Va. Ct. App. Feb. 4, 2025) (*NPR*),[4] defined imprisonment this way. Specifically, Insider avers that Code § 2.2-3706(B)(4) should be read as "all records of persons imprisoned in penal institutions in the Commonwealth provided such records relate to *the carrying out of their sentence*." If the legislature had intended to narrow or qualify the exemption so that it only related to "the sentence," it would have done so. Indeed, "[t]here are numerous substitutions or qualifying words the General Assembly could have utilized to achieve [Insider's] narrower interpretation, but it did not do so." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021). As a reviewing Court, we are not at liberty to supplant unambiguous terms within a code section with limiting or qualifying language for the purpose of narrowing the scope of the code section.

Also in support of its argument, Insider incorrectly contends that because the surveillance videos are not specific to one inmate, they do not fall under the ambit of Code § 2.2-3706(B)(4). However, the code section does not contain language limiting the record to be made "of a specific inmate" or even "of a person imprisoned"; such a qualifier simply does not exist. Instead, the language is broad and unambiguous, providing that "[*a*]*ll* records of *persons* imprisoned" be excluded from mandatory disclosure, so long as the records relate to their "imprisonment." Code § 2.2-3706(B)(4) (emphasis added). Insider's position would add language to the exemption that was simply not included by the legislature. *See Va. Elec. & Power Co.*, 300 Va. at 160 ("We 'presume that the legislature chose, with care, the specific words of the statute' and that '[t]he act of

---

[4] Unpublished opinions can be cited and considered for their persuasive value but are not binding precedent. *See Castillo v. Loudoun Cnty. Dep't of Family Servs.*, 68 Va. App. 547, 568 n.7 (2018).

choosing carefully some words necessarily implies others are omitted with equal care.'" (alteration in original) (quoting *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020))).

In addition, we are unpersuaded by Insider's argument that this Court's decision in *NPR* narrowed the scope of Code § 2.2-3706(B)(4). In *NPR*, this Court found that "the recordings can fairly be described as being 'of' an incarcerated person, as each recording is specific to one inmate, and the DOC created and maintains these recordings solely to document that inmate's execution." Slip op. at 5. However, Insider's emphasis on the words "specific" and "solely" is misplaced. In *NPR*, this Court was analyzing whether the recordings were "records *of* persons imprisoned." *Id.* at 4 (emphasis added) (stating that "[t]he crux of the disagreement between the parties largely lies in what 'of' denotes in '[a]ll records of persons imprisoned'" (second alteration in original)). Accordingly, this Court found that the recordings were "of" persons imprisoned, because they were records "'connected with' or 'referring to'" an inmate, rather than making a broad ruling that the records need to be specific to one inmate or that the recording is maintained solely to document the carrying out of their sentence in order to fall under the exemption. *See id.*

We agree that the exemptions of VFOIA are to be liberally construed, but the General Assembly created the exemptions for a reason and when a record is specifically made exempt in such a broad and clear manner, we cannot overstep our role as the judiciary and add our own narrowing language to an otherwise unambiguous statute. *See Hawkins*, 301 Va. at 425.

The incident reports would likewise be exempt from mandatory disclosure under Code § 2.2-3706(B)(4). The incident reports sought by Insider were generated as a result of inmates' actions and included correctional officer responses to an incident relating to those inmates. Thus, the incident reports are "records of persons imprisoned" under Code § 2.2-3706(B)(4), as they are reports documenting actions of inmates. Without the inmates' actions leading up to the incident requiring correctional officer response, there are no records here for Insider to request. Further, the

altercations and the correctional officers' response can fairly be said to "relate to the imprisonment" as they are connected with the prisoners' confinement or the quality, state, or condition of being confined. Code § 2.2-3706(B)(4). Accordingly, it can be fairly said that these incident reports are "records of persons imprisoned" that "relate to the imprisonment." *Id.*

Again, although VFOIA provisions are to be liberally construed, the records sought by Insider are specifically made exempt under Code § 2.2-3706(B)(4). Therefore, the circuit court erred in concluding that the video recordings and incident reports are not exempt under Code § 2.2-3706(B)(4).

II. Insider waived their right to request the bite reports and nine of the surveillance videos.

The bite reports here are distinct from the surveillance videos and incident reports because they are records created and maintained to document the VADOC canine's action, rather than inmates' action. However, we need not address whether the bite reports would fall under one of the VFOIA exemptions or whether the redaction sections would apply, because Insider waived their right to request them.

On March 13, 2023, Insider agreed that they "will not proceed with the filing of this [V]FOIA petition, and any claims relative to the February 18, 2022 and June 17, 2022 [V]FOIA requests will be deemed settled." The February 18, 2022 and June 17, 2022 VFOIA requests contained requests for "all video and audio recordings of all uses of force involving a canine at Red Onion State Prison . . . from January 1, 2021 through December 31, 2021," and "[a]ll 'bite reports' . . . from January 1, 2017 to the present." About a month later, Insider filed another VFOIA request that, among other things, requested the bite reports and nine video recordings that had been "deemed settled" under the agreement. At the February 14, 2024 hearing, VADOC argued that Insider was not entitled to the "settled" records because of the parties' agreement. The circuit court rejected VADOC's argument.

The agreement is clear that Insider agreed to forgo pursuing the video recordings from 2021 and the bite reports from 2017 to the present. Those bite reports and nine of the video recordings that were settled are now subject to this litigation.

Insider contends that they were entitled to re-request the settled bite reports because VADOC allegedly did not produce all the bite reports. But VADOC disputes this and asserts that all bite reports were provided. Indeed, at the February 14, 2024 hearing, Fulmer testified that he sent Insider "every single bite log we had." Insider, at the hearing and again at oral argument, insisted that they did not receive all the bite reports, but they otherwise failed to present any evidence that there were bite reports that were not provided and instead claimed that it was VADOC's burden to prove that the records did not exist. We reject Insider's contention; and, even if there was evidence of a breach for nonperformance under the agreement, Insider was free to pursue its own action requesting relief for any alleged breach of contract claim, not to breach the agreement themselves.[5]

Therefore, the circuit court erred in finding that Insider was entitled to seek the settled records through their petition for writ of mandamus.[6]

III. Whether the circuit court's errors were harmless

"Any error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis because 'Code § 8.01-678 makes "harmless-error review required in all cases.""" *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 853 (2019) (quoting *Commonwealth v.*

---

[5] Contrary to Insider's assertion, VADOC adequately preserved its waiver argument by presenting it to the circuit court at the hearing on the merits of the petition, and the circuit court rejected it, to which VADOC noted its objection.

[6] Because the foregoing holdings are dispositive of VADOC's remaining assignments of error, and to avoid unnecessary rulings, we decline to address them as "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Henderson v. Cook*, 297 Va. 699, 710 (2019) (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).

*White*, 293 Va. 411, 420 (2017)). "Absent an error of constitutional magnitude, 'no judgment shall be arrested or reversed' when 'it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." *Id.* (quoting Code § 8.01-678).

Here, it plainly appears that substantial justice was not reached. The surveillance videos and incident reports are records that are exempt from disclosure under Code § 2.2-3706(B)(4), but the circuit court incorrectly found otherwise and ordered the records to be disclosed. Also, Insider was precluded from requesting the bite reports because they entered into an agreement with VADOC stating that they would not request them. In conclusion, the error was not harmless because affirming the circuit court would compel VADOC to provide records that are within their discretion to disclose.

IV. Insider's assignments of cross-error

Because Code § 2.2-3706(B)(4) applies to the entire content of the record (i.e., *records* of persons imprisoned) the records are withheld from disclosure in their entirety. To be sure, unlike some of the other exemptions under VFOIA, Code § 2.2-3706(B)(4) specifically states that the record is exempt, not just specific information sought within the record. For example, Code § 2.2-3705.1(1) exempts portions of records that contain "personnel information concerning identifiable individuals." *See Hawkins*, 301 Va. at 428 ("By adding a redaction provision and limiting the exemption to 'information' instead of the entirety of a public record, the General Assembly demonstrated its intent to narrow the exception and provide for partial disclosure.").

Code § 2.2-3706(B)(4) lacks such narrowing language; thus the entirety of the record is exempt, and

the redaction rule does not apply.[7]

CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed.

*Reversed.*

---

[7] We decline to address Insider's remaining assignments of cross-error as "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Henderson*, 297 Va. at 710 (alteration in original) (quoting *Swann*, 290 Va. at 196). Further, Insider's request for attorney fees is denied, as they have not "substantially prevail[ed] on the merits of the case." Code § 2.2-3713(D).

Malveaux, J., concurring only in the judgment.

I agree with the majority that the circuit court's judgment must be reversed. I write separately, however, to explain where I locate the reversible errors in the record of this challenging case.

"Whether documents . . . should be excluded under [VFOIA] is a mixed question of law and fact." *Commonwealth v. Sawyer*, 84 Va. App. 547, 560 (2025) (alterations in original) (quoting *Hawkins v. Town of S. Hill*, 301 Va. 416, 424 (2022)). "To the extent our review of the circuit court's judgment requires us to engage in statutory interpretation, it presents questions of law subject to de novo review." *Gloss v. Wheeler*, 302 Va. 258, 278 (2023). But "[t]o the extent that the proper application of VFOIA's requirements turns on the specific facts of the case, we owe deference to the [circuit] court's factual findings unless 'they are "plainly wrong or without evidence to support [them].""" *Blackstock v. Va. Dep't of Transp.*, 84 Va. App. 229, 236-37 (2025) (last alteration in original) (quoting *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 205 (2023)).

Here, the circuit court found that the written records—incident reports and canine bite reports—were subject to mandatory disclosure under VFOIA, except for certain portions of those records that were excluded from mandatory disclosure but subject to disclosure in VADOC's discretion. Specifically, the court found that it would be discretionary for VADOC to disclose information in the records pertaining to: persons imprisoned, where the records related to the imprisonment, *see* Code § 2.2-3706(B)(4); prison infrastructure and security systems, the disclosure of which would jeopardize safety and security, *see* Code § 2.2-3705.2(14); and/or identifiable individuals' personnel information, *see* Code § 2.2-3705.1(1). Under the provisions of VFOIA, it was VADOC's responsibility to "bear the burden of proof to establish [these] exclusion[s] by a preponderance of the evidence." Code § 2.2-3713(E). But I believe the circuit court, in finding that these exclusions allowing discretionary disclosure applied, did not apply the preponderance

- 12 -

standard and instead weighed the equities to the parties of mandatory disclosure versus discretionary exclusion.

Here, the circuit court conducted two hearings on Insider's petition for a writ of mandamus. At the first hearing, on February 14, 2024, the circuit court heard argument by the parties and initially stated that, with respect to both written reports and video recordings, "for me, it doesn't matter one way or the other to what purpose [Insider] wish[es] to make use of these records. Doesn't matter. If you have a right to them, you ought to have them. . . . The only thing that matters is whether you have a right to them." I believe this was a correct articulation of both the ultimate question before the circuit court and the more immediate issue of whether VADOC could demonstrate, by a preponderance of the evidence, that some exclusions from mandatory disclosure applied. The circuit court then reiterated that if Insider met "the requirements of [V]FOIA to get them . . . , great; let's talk about those. But it's not really useful . . . to talk about -- to all the things that these [records] are going to be used for." The circuit court, however, then asked the parties, "[s]o, can we talk about it in a practical kind of way? Tell me whether or not any redacted records would be acceptable to [Insider]." Later, after hearing additional argument and receiving evidence, the circuit court asked VADOC to send it all of the video and written records for in camera review. The circuit court noted that it would "take a look and see whether or not there's anything that can be released" and that it would view VADOC's suggested redactions to the written reports "to see what could go, what can't go" before "mak[ing] a determination." The circuit court also confirmed counsel for VADOC's clarification that "I don't think there's a live ruling yet for me to object to," with respect to any mandatory or discretionary disclosures.

At the second hearing, on April 11, 2024, the circuit court ruled that it did not have "any problem . . . with the suggested redactions" to the written documents. The circuit court explained that "the proposed redactions that [it] saw are all reasonable in terms of what was removed from the

- 13 -

record" and that there was not "anything that went too far to suggest" redactions like those sometimes encountered in national security contexts, where "you get a redacted page and there's one line . . . and that's it." Noting that "[t]hat's not what this is," the circuit court further explained that "so, there's information in there that's you [sic] useful to a reporter or some other journalist who might like to say, this is what happened here. I thought the redactions were done appropriately and fairly."

The circuit court's course of action was therefore to take the written records under advisement, but then to evaluate whether they were subject either to mandatory disclosure or to discretionary disclosure by VADOC based on improper criteria. That is, the circuit court did not determine whether the written records alone were subject to mandatory disclosure under VFOIA or, by a preponderance of the evidence, satisfied VFOIA's criteria for a discretionary disclosure exemption under Code §§ 2.2-3706(B)(4), -3705.2(14), and/or -3705.1(1). Rather, it made its determination based on an examination of the records, together with proposed redactions to those records, viewed in light of what was "reasonable," what did not go "too far" in redaction, and what would provide "information . . . useful to a reporter." By grounding its VFOIA determination not in what the preponderance of the evidence showed with respect to any statutory exclusions from mandatory disclosure, but in what could be "appropriately and fairly" done to redact the written documents so that they would balance VADOC's concerns with what journalists might find "useful," the circuit court erred. It was incumbent upon the circuit court to apply the proper standard to the evidence before it, rather than to balance the equities of the parties as it effectively did here.

Similar problems are evident in the circuit court's consideration of the video records. The circuit court found that certain portions of the video recordings were excluded from mandatory disclosure, but subject to disclosure in VADOC's discretion pursuant to the same three mandatory

disclosure exemptions as the written records: Code §§ 2.2-3706(B)(4), -3705.2(14), and/or -3705.1(1). But before making this determination, the circuit court first took the video records under advisement. It then found, at the second hearing, that VADOC's argument that release of the video records would compromise "security within the facility" were "well-taken." Yet despite this finding, the circuit court limited VADOC's discretion to "withhold[ing] all but the single most direct camera angle" from each set of video records depicting a single incident and to "blur[ring] the faces" of VADOC employees and inmates who were not engaged by a canine. The circuit court explained at the second hearing that it "d[id]n't know how best to define what [it was] ordering [VADOC] to do, other than to say that [VADOC] needs to make available generally videos that display the incident itself." The circuit court further explained that part of the context for its ruling was that "there needs to be some method whereby the public gets to look and see what's happening within certain limits." So again, the circuit court applied a de facto balancing test between public and governmental interests—one that resulted in the circuit court directing VADOC how to exercise its discretion despite what the circuit court found were VADOC's "well-taken" security concerns. As with the written records, it was incumbent upon the circuit court to apply the proper standard to the evidence before it and make its determinations based on VFOIA's statutory provisions for mandatory or discretionary release, rather than to balance the parties' equities to achieve what the court believed to be a reasonable or fair solution.

Furthermore, I do not believe these errors by the trial court were harmless. Code § 8.01-678 applies in civil as well as criminal contexts, *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016), and pursuant to that statute, "[a]bsent an error of constitutional magnitude, 'no judgment shall be arrested or reversed' '[w]hen it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached,'" *Spruill v. Garcia*, 298 Va. 120, 127 (2019) (second alteration in original) (quoting Code § 8.01-678). "Applying this

standard, a non-constitutional error is harmless 'if, when all is said and done, the error did not influence the [fact-finder], or had but slight effect.'" *Spruill*, 298 Va. at 127-28 (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015)). Here, I cannot conclude that if the circuit court had applied the proper standard and analytical framework to the issues, the court's rulings would have been the same; so I cannot conclude that the errors discussed above did not influence the circuit court or had only slight effect.

I conclude by noting that as an appellate court, "[t]he 'doctrine of judicial restraint requires [us] to decide cases "on the best and narrowest ground available."'" *Zinner v. Washington Gas Light Co.*, 85 Va. App. 220, 248 (2025) (quoting *Rebh v. Cnty. Bd. of Arlington Cnty.*, 303 Va. 379, 382 (2024)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree," while "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases." *Highlander v. Va. Dep't of Wildlife Res.*, 84 Va. App. 404, 424 (2025) (alteration in original) (quoting *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020)). Applying this analytical scheme "reinforces the common-sense view that 'courts should think hard, and then think hard again, before turning small cases into large ones.'" *Rebh*, 303 Va. at 382-83 (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). Here, I respectfully contend that reversal of the circuit court for the reasons discussed above, rather than based on the interpretation of Code § 2.2-3706(B)(4) and contract principles that implicate future negotiations over VFOIA requests, is the resolution affecting the least number of cases and with which the least number of jurists would disagree. While I appreciate the circuit court's efforts to resolve this complex case in a pragmatic way, I do not believe a result that splits the difference on these important matters is what the statutory scheme allows. Accordingly, while I concur in the judgment of my colleagues, I do so for different reasons.