Present: All the Justices

BILL BECK, ET AL.

v.  Record No. 030723          OPINION BY JUSTICE DONALD W. LEMONS
                                         March 5, 2004
GORDON SHELTON, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

In this appeal, we consider several issues relating to The Virginia Freedom of Information Act ("FOIA" or the "Act"), Code §§ 2.2-3700 to -3714, including: 1) whether "members-elect" are "members" of a public body for the purpose of application of FOIA; 2) whether the use of electronic mail ("e-mail") for communication between three or more members of a public body constitutes a "meeting" for the purposes of FOIA; and, 3) whether a particular gathering of citizens attended by three members of the Fredericksburg City Council constituted a "meeting" under the Act.

Facts and Proceedings Below

Gordon Shelton, Anthony Jenkins, and Patrick J. Timpone (collectively, "Shelton") filed an 18-count petition for writ of mandamus and injunction against William M. Beck, Mayor of the City of Fredericksburg; W. Scott Howson III, Vice-Mayor of the City of Fredericksburg; and three Councilmen, Thomas P. Fortune, William C. Withers, Jr., and Matthew J. Kelly[1]

---

[1] Fortune and Withers are not appellants herein.

(collectively, "Defendants" or "Beck"). While citing multiple incidents of alleged violations of FOIA, the gravamen of the complaint was that Defendants "deliberately e-mailed each other in a knowing, willful and deliberate attempt to hold secret meetings, avoid public scrutiny" and "discuss City business and decide City issues without the input of all the council members and the public." Shelton asserted that various exchanges of e-mail, face-to-face meetings, and one public gathering on the streets of Fredericksburg constituted "meetings" under FOIA for which there was no notice pursuant to Code § 2.2-3707 and no emergency or other exception which would relieve the Defendants from the obligations imposed upon them concerning public meetings.

Defendants prevailed on demurrers or at trial on fourteen of the eighteen counts and Shelton voluntarily dismissed three other counts before trial.[2] The trial court held that the Act did not apply to conduct of members-elect of the Fredericksburg City Council, that certain e-mail communications did constitute a "meeting" as defined in FOIA, and that a particular gathering of citizens and council members, the Charlotte Street gathering, was not a "meeting" under the Act. While holding that Defendants violated the

---

[2] Only Counts I-IX, XI, XIV, and XVII are specifically before us on appeal.

2

open meeting provisions of FOIA, the trial court found that the violations were not "willful or knowing," declined to impose any penalty, and declined Shelton's motion for attorney's fees.  The final order was silent regarding Shelton's request for a writ of mandamus or injunctive relief. Beck appeals the adverse judgment of the trial court and Shelton assigns cross-error.

### Application of FOIA to "Members-elect"

In Counts I - IX of his petition, Shelton alleged various violations of FOIA by face-to-face meetings and e-mail communications between Mayor Beck, Vice Mayor Howson, and then council members-elect Kelly, Fortune, and Withers.  Kelly, Fortune, and Withers did not become council members until they took their respective oaths of office and began their respective terms on July 1, 2002.  Under the facts of this case, pursuant to Code § 2.2-3701, an informal assemblage of three members may trigger the application of the open meeting requirements of FOIA.[3]  In these counts, Shelton alleges "meetings" between two members of council and three members-elect.  Defendants demurred to Counts I - IX, asserting that

---

[3] The definition of "meeting" in Code § 2.2-3701 would apply to a quorum, if less than three.  Four members represent a quorum of the City Council; consequently, under the circumstances of this case, a meeting of at least three members is required before FOIA open meeting requirements are implicated.

3

as a matter of law the application of FOIA does not extend to members-elect of a public body. If FOIA does not apply to members-elect, then only two members are alleged to have met and the threshold requirement of an assemblage of three members was not met. The trial court agreed and sustained the demurrers.

In support of his assignment of cross-error, Shelton argues that the definition of "public body" specifically contemplates that "private sector or citizen members" may be included as a part of a public body, that members-elect have a "statutory obligation to become familiar with the requirements of the Act," and that the provisions of FOIA are to be "liberally construed." For these reasons, Shelton maintains that the provisions of FOIA are applicable to conduct of a member-elect as if she were a member of the public body.

Under Code § 2.2-3701, the definition of "public body" is extended to

> (ii) any committee, subcommittee, or other entity
> however designated, of the public body created to
> perform delegated functions of the public body or
> to advise the public body. It shall not exclude
> any such committee, subcommittee or entity
> because it has private sector or citizen members.

This provision simply includes committees, subcommittees, or entities within the types of public bodies covered by FOIA, irrespective of participation by private sector or citizen

4

members.  It does not expand the meaning of "members" in the definition of "meetings" also contained in Code § 2.2-3701. Furthermore, the City Council does not have private sector or citizen members and did not use a committee or subcommittee structure.  The full body or a quorum of the City Council cannot logically be presumed to be a committee or subcommittee of itself.

Additionally, it is true that members-elect are to familiarize themselves with the provisions of FOIA after they are elected and before they take office.

> Any person elected, reelected, appointed or reappointed to any body not excepted from this chapter shall (i) be furnished by the public body's administrator or legal counsel with a copy of this chapter within two weeks following election, reelection, appointment or reappointment and (ii) read and become familiar with the provisions of this chapter.

Code § 2.2-3702.  However, nothing in this statutory provision alters the application of FOIA or modifies the meaning of "members" in Code § 2.2-3701.

Finally, Shelton argues that the statutory admonition of "liberal construction" found in the policy statement of Code § 2.2-3700(B) justifies extending the term "members" in Code § 2.2-3701 to include "members-elect."  We do not believe that the legislature was inviting the judiciary, under the guise of

"liberal construction," to rewrite the provisions of FOIA as we deem proper or advisable.  To the contrary,

> [w]hen the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language.  Thus, when the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed.

Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002) (citations omitted).

We will not rewrite Code § 2.2-3701 to change the word "members" to the phrase "members or members-elect."  It is not our prerogative.  If the legislature chooses to do so, it is properly within its power to do so.  The trial court did not err in holding that the open meeting provisions of FOIA did not apply to meetings of members of a public body that reach the required threshold of participants under Code § 2.2-3701 only by inclusion of members-elect.

### E-mail Communications

It is not disputed that on several occasions after July 1, 2002, more than three members of City Council corresponded with each other concerning specific items of public business by use of e-mail.  It would serve no useful purpose to relate the particular subjects of the communications because the issue before us involves the method of communication.

6

Succinctly stated, assuming all other statutory requirements are met, does the exchange of e-mails between members of a public body constitute a "meeting" subject to the provisions of FOIA?  Beck assigns error to the trial court's holding that it does.[4]

Indisputably, the use of computers for textual communication has become commonplace around the world.  It can involve communication that is functionally similar to a letter sent by ordinary mail, courier, or facsimile transmission.  In this respect, there may be significant delay before the communication is received and additional delay in response.  However, computers can be utilized to exchange text in the nature of a discussion, potentially involving multiple participants, in what are euphemistically called "chat rooms" or by "instant messaging."  In these forms, computer generated communication is virtually simultaneous.

In the case before us, the e-mail communications did not involve virtually simultaneous interaction.  Rather, the e-mail communications at issue in this case were more like traditional letters sent by ordinary mail, courier, or facsimile.  The record contains printed copies of the e-mails

---

[4] Shelton raises for the first time on appeal that a vote was taken by e-mail.  Nothing in the record supports such an allegation and furthermore it is barred from consideration under Rule 5:25.

7

in question.  The shortest interval between sending a particular e-mail and receiving a response was more than four hours.  The longest interval was well over two days.

The trial court held that such use of e-mail constituted a "meeting" pursuant to Code § 2.2-3702 and that Defendants held such meetings in private, without notice to the public and without opportunity for the public to attend in violation of the open meeting requirements of Code § 2.2-3707.  The trial court held that the issue was not the electronic nature of the transmission; rather, "It is how the e-mail is used." While we agree with the trial court that "how the e-mail is used" is the dispositive consideration, we disagree that this case presents circumstances constituting a "meeting" for the purposes of FOIA.

FOIA deals with public access to records and meetings of public bodies.  There is no question that e-mails fall within the definition of public records under Code § 2.2-3701.  As previously stated, the issue in this case is whether the exchange of e-mail also constitutes a "meeting" under FOIA. Code § 2.2-3708 provides that

> [i]t shall be a violation of this chapter for any
> political subdivision or any governing body . . .
> to conduct a meeting wherein the public business
> is discussed or transacted through telephonic,
> video, electronic or other communication means
> where the members are not physically assembled.

8

By definition, a violation under § 2.2-3708 presumes a "meeting" as defined in FOIA.  Code § 2.2-3701 provides in part:

> "Meeting" or "meetings" means the meetings including work sessions, when sitting physically, or through telephonic or video equipment pursuant to § 2.2-3708, as a body or entity, or as an informal assemblage of (i) as many as three members or (ii) a quorum, if less than three, of the constituent membership, wherever held, with or without minutes being taken, whether or not votes are cast, of any public body.  The gathering of employees of a public body shall not be deemed a "meeting" subject to the provisions of this chapter.

Clearly, the conduct in question did not involve "sitting physically" in a "work session."  Consequently, the key to resolving the question before us is whether there was an "assemblage."  The term "assemble" means "to bring together" and comes from the Latin simul, meaning "together, at the same time."  Webster's Third New International Dictionary 131 (1993).  The term inherently entails the quality of simultaneity.  While such simultaneity may be present when e-mail technology is used in a "chat room" or as "instant messaging,"[5] it is not present when e-mail is used as the functional equivalent of letter communication by ordinary mail, courier, or facsimile transmission.  The General

_____

[5] This issue is not before us and we do not decide it today.

9

Assembly anticipated this type of communication when it provided:

> nothing contained herein shall be construed to prohibit (i) separately contacting the membership, or any part thereof, of any public body for the purpose of ascertaining a member's position with respect to the transaction of public business, whether such contact is done in person, by telephone or by electronic communication, provided the contact is done on a basis that does not constitute a meeting as defined in this chapter . . .

Code § 2.2-3710(B).  Under the terms of this provision, it is anticipated that some electronic communication may constitute a "meeting" and some may not.  As previously stated, the key difference between permitted use of electronic communication, such as e-mail, outside the notice and open meeting requirements of FOIA, and those that constitute a "meeting" under FOIA, is the feature of simultaneity inherent in the term "assemblage."

The Attorney General of Virginia has had occasion to render an opinion on this subject.  1999 Op. Atty. Gen. 12. The question presented to the Attorney General was "whether § 2.1-343.1(A), a portion of The Virginia Freedom of Information Act, §§ 2.1-340 through 2.1-346.1 of the *Code of Virginia,* prohibits an elected member of a local governing body from sending electronic mail communications to three or

10

more other members of the governing body."[6]  Id.  The Attorney

General did not consider the dynamics presented in "chat

rooms" or "instant messaging," but did consider the precise

use of e-mail at issue in this case.  For the purposes of the

Opinion, the Attorney General used the following definition:

> Electronic mail is commonly understood to be the
> electronic transmission of keyboard-entered
> correspondence over communication networks.  An
> electronic mail system enables the sender to
> compose and transmit a message to a recipient's
> electronic mailbox, where the message is stored
> until the recipient retrieves it.  The message
> may be sent to several recipients at the same
> time.

Id. at 13.  Concluding that "[t]ransmitting messages through

an electronic mail system is essentially a form of written

communication," the Attorney General opined that such

communication does not constitute a "meeting" under FOIA.  Id.

While it is not binding on this Court, an Opinion of the

Attorney General is "entitled to due consideration."

Twietmeyer v. City of Hampton, 255 Va. 387, 393, 497 S.E.2d

858, 861 (1998).  This is particularly so when the General

Assembly has known of the Attorney General's Opinion, in this

case for five years, and has done nothing to change it.  "The

legislature is presumed to have had knowledge of the Attorney

---

[6] The question was premised upon FOIA prior to its
recodification in Title 2.2 of the Code of Virginia.  The
language involved is substantially the same in the
recodification.  See Code §§ 2.1-340 to -346.1 (1968).

11

General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view."  Browning-Ferris, Inc. v. Commonwealth, 225 Va. 157, 161-62, 300 S.E.2d 603, 605-06 (1983).

We hold that the trial court erred in its determination that the e-mail communications at issue in this case constituted a "meeting" under FOIA.  Count XI of Shelton's petition must fail because it is premised upon e-mail communications constituting a meeting under FOIA.

E-mails Concerning Historic Preservation

In Count XIV of Shelton's petition, it is alleged that a "meeting" took place by e-mail communication between at least three members of City Council.  The trial court granted summary judgment to Defendants, holding that the alleged meeting was for information purposes only and was not for the purpose of discussing public business.  Shelton assigns cross-error to the trial court's holding.  Shelton argues that the trial court too narrowly construed what it means to "discuss" the public's business.  It is unnecessary to address this assignment of cross-error because we have held that the e-mail communications at issue in this case do not constitute a "meeting" under FOIA.

The Charlotte Street Gathering

12

In July 2002, citizens living near the intersection of Charlotte and Weedon Streets in the City of Fredericksburg were concerned about the lack of a stop sign at the intersection and other issues related to traffic safety. Two city employees and three members of City Council were separately invited by concerned citizens to attend a gathering at the intersection in the middle of the day on July 25, 2002. Approximately 20 people were in attendance. After hearing testimony and the arguments of counsel, the trial court found as a matter of fact that the gathering was

> scheduled as a consequence of citizen inquiry;
> that the meeting's purpose, in essence, was an
> informational forum in reference to traffic
> issues in a given neighborhood or on a specific
> street; that the three members of Council who
> appeared did not, according to the testimony
> which is uncontradicted, . . . discuss anything
> with each other as a group of three or otherwise.

On appeal, Shelton maintains that such a gathering was a "meeting" under the terms of FOIA. We disagree. The public policy of the Commonwealth "ensures the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted." Code § 2.2-3700(B). But FOIA "shall not be construed to discourage the free discussion by government officials or employees of public matters with the citizens of

13

the Commonwealth." Id. Obviously, the balance between these values must be considered on a case-by-case basis according the facts presented. Here, FOIA gives additional guidance:

> Nothing in this chapter shall be construed to prohibit the gathering or attendance of two or more members of a public body (i) at any place or function where no part of the purpose of such gathering or attendance is the discussion or transaction of any public business, and such gathering or attendance was not called or prearranged with any purpose of discussing or transacting any business of the public body or (ii) at a public forum, candidate appearance, or debate, the purpose of which is to inform the electorate and not to transact public business or to hold discussions relating to the transaction of public business, even though the performance of the members individually or collectively in the conduct of public business may be a topic of discussion or debate at such public meeting.

Code § 2.2-3707(G).

The trial court was not plainly wrong or without evidence to support its judgment that the Charlotte Street gathering was a citizen-organized "informational forum" and that no part of the purpose of the gathering or attendance was the discussion or transaction of any public business. The undisputed evidence at trial was that City Council did not have any business pending before it on the issue of traffic controls, nor was it likely to have such matters come before it in the future. The trial court did not err in granting summary judgment to Defendants on Count XVII.

Conclusion

14

The trial court did not err in granting summary judgment for Defendants on Counts I - IX of Shelton's petition. These counts were premised upon FOIA being applicable to members-elect of a public body. Members-elect are not "members" under the plain language of Code § 2.2-3701. Count XI of Shelton's petition is premised upon e-mail communications constituting a "meeting" under FOIA. Under the facts of this case, such e-mail communications did not constitute a "meeting" under FOIA, and the trial court erred in holding that they did. The trial court granted Defendants' motion for summary judgment on Count XIV on the basis that the e-mails were for informational purposes and did not constitute a meeting. We need not address this reason for the trial court's holding because we have already concluded that e-mail communications in this case did not constitute a "meeting" under FOIA. Finally, the trial court did not err in holding that the Charlotte Street gathering was not a "meeting" under FOIA. We will affirm the trial court's judgment with respect to Counts I-IX and XVII. We will affirm the trial court's judgment with respect to Count XIV, albeit for different reasons. We will reverse the trial court's judgment with respect to Count XI. Having disposed of all matters, and nothing remaining for the trial court to consider, we will enter final judgment for Defendants.

15

                              <u>Affirmed in part,</u>
                              <u>reversed in part,</u>
                              <u>and final judgment</u>.