PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Alston and Senior Judge Frank
Argued at Norfolk, Virginia

JOSHUA SAQUAN MAURICE ELEY

                                                           OPINION BY
v.       Record No. 0625-18-1        CHIEF JUDGE MARLA GRAFF DECKER
                                                         APRIL 16, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Catherine A. Tatum, Assistant Public Defender, for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Joshua Saquan Maurice Eley appeals his misdemeanor conviction for carrying a loaded

firearm equipped with a high-capacity magazine in public in violation of Code § 18.2-287.4.  On

appeal, he suggests that he was entitled to the statutory exemption in Code § 18.2-308(C)(8) for a

firearm carried in "a personal, private motor vehicle" and that the circuit court erred in ruling to

the contrary.  We hold that the exemption does not apply because the record establishes that the

appellant knew that the truck in which he secured the firearm was stolen and, thus, it was not "a

personal, private motor vehicle" within the meaning of the statutory exemption.  Consequently,

we affirm the challenged conviction.

I.  BACKGROUND

On the evening of October 10, 2017, two detectives with the City of Newport News

Police Department were patrolling within the city when they saw the appellant and another man

sitting in a parking lot open to the public in a pickup truck that had been reported stolen.  As the

detectives approached, the appellant "quickly" got out of the driver's side of the vehicle and

"tr[ied] to go away from it." They detained and questioned him. The appellant said that he "had gotten the vehicle from someone . . . that he . . . did not know very well." He "admitted having a feeling that . . . something [was] wrong with the vehicle," but he "never admitted . . . knowing that the vehicle was stolen."

One of the detectives asked the appellant whether any firearms were in the truck. The appellant said yes and directed him to the center console, which was "secured with a latch." Upon opening the console, the detective found and seized a "center fire" .357-caliber, semiautomatic handgun. The weapon, which was loaded, "had an extended magazine with a 31-cartridge capacity."

The appellant was charged with grand larceny of the pickup truck in violation of Code § 18.2-95 and misdemeanor possession of a firearm with a magazine capacity of twenty or more rounds in violation of Code § 18.2-287.4. By agreement with the Commonwealth, the appellant entered a guilty plea to the lesser charge of receiving stolen property, based on his possession of the truck, in violation of Code § 18.2-108. He entered a plea of not guilty to the misdemeanor firearm charge.

Following presentation of the Commonwealth's evidence related to the firearm offense, the appellant made a motion to strike. He argued that he was entitled to possess the loaded firearm pursuant to a statutory exemption because the gun was secured within the stolen truck in a specified fashion. The prosecutor argued that the plain language of the statutory exemption showed that the General Assembly did not intend for the exemption to cover firearms secured in stolen vehicles. The trial court accepted the Commonwealth's reading of the statute and denied the motion to strike. The court reasoned that this interpretation "comports with our sense of privacy" because no "right to privacy [exists] in a personal, private *stolen* motor vehicle."

(Emphasis added). The appellant was found guilty and sentenced to twelve months of incarceration for the firearm offense, with all twelve months suspended, and a $250 fine.

## II. ANALYSIS

Where the "appellant argues that the trial court, under the facts adduced at trial, misapplied a statutory exception to the prohibition on carrying a concealed weapon[,] . . . the argument presents a mixed question of law and fact, which we review *de novo* on appeal." Hodges v. Commonwealth, 64 Va. App. 687, 693 (2015). The facts in this case are not in dispute. Consequently, the issue is one of pure statutory interpretation, "a question of law . . . review[ed] *de novo*." Doulgerakis v. Commonwealth, 61 Va. App. 417, 419 (2013) (quoting Wright v. Commonwealth, 278 Va. 754, 759 (2009)).

Code § 18.2-287.4(a) provides in relevant part that it is unlawful "to carry a loaded . . . semi-automatic center-fire rifle or pistol that expels . . . projectiles by action of an explosion of a combustible material and is equipped . . . with a magazine that will hold more than 20 rounds of ammunition . . . on or about his person" in any place "open to the public" in various jurisdictions within the Commonwealth, including the City of Newport News. The statute incorporates exemptions set out in two other provisions, Code §§ 18.2-308 and -308.016. Code § 18.2-287.4. As pertinent here, Code § 18.2-308(C)(8) provides an exemption for "[a]ny person who may lawfully possess a firearm and is carrying a handgun while in a personal, private motor vehicle or vessel and such handgun is secured in a container or compartment in the vehicle or vessel." See generally Doulgerakis, 61 Va. App. at 420 (recognizing enactment of the exemption in 2010 under a different subsection of the statute). "[T]he Commonwealth bears the burden of establishing that the exemption . . . does not apply." Hodges, 64 Va. App. at 694, 699.

It is undisputed here that possession of the type of loaded firearm that the appellant carried in the center console of the pickup truck was proscribed by Code § 18.2-287.4(a). The

challenge concerns whether the appellant is entitled to invoke the exemption contained in Code § 18.2-308(C)(8). The Commonwealth concedes the sufficiency of the evidence to prove two of the three elements required for the exemption—that the appellant was "lawfully [permitted to] possess a firearm" and the firearm was "secured in a container or compartment" in a vehicle. See Code § 18.2-308(C)(8). See generally Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*) ("On purely factual questions . . . , we can and do rely on the adversarial process to sort out the contested and the uncontested aspects of the case before we begin our responsibility of applying *de novo* the correct legal principles."). The only part of entitlement to the exemption that is in dispute concerns whether the appellant, who was in the driver's seat of a stolen pickup truck and pleaded guilty to possessing the truck with knowledge that it was stolen, possessed the secured handgun "while in a personal, private motor vehicle" in the context of the statute. We conduct our analysis taking into account well-established principles of statutory construction.

"The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we [examine] the statute."'" Doulgerakis, 61 Va. App. at 420 (first alteration in original) (quoting City of Va. Beach v. ESG Enters., 243 Va. 149, 153 (1992)). "[C]ourts 'are required to ascertain and give effect to the intention of the legislature, which is usually self-evident from the statutory language.'" Armstead v. Commonwealth, 55 Va. App. 354, 360 (2009) (quoting Johnson v. Commonwealth, 53 Va. App. 608, 612 (2009)).

Consequently, we "apply[] the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd result." Wright, 278 Va. at 759. A statute is ambiguous if "the text can be understood in more than one way or refers to two or more things simultaneously [or] [if] the language is difficult to comprehend, is of doubtful import, or lacks clearness or

- 4 -

definiteness." Blake v. Commonwealth, 288 Va. 375, 381 (2014) (first alteration in original) (quoting Boynton v. Kilgore, 271 Va. 220, 227 n.8 (2006)). Only if a statute is found to be ambiguous may the Court consider other factors such as the purpose, reason, and spirit of the law, including any legislative history. See, e.g., Thomas v. Commonwealth, 256 Va. 38, 41 (1998); Simpson v. Simpson, 162 Va. 621, 635 (1934); Auer v. Commonwealth, 46 Va. App. 637, 647-48 (2005).

In considering the meaning of particular language in context, "[w]ords in a statute should be interpreted, if possible, to avoid rendering [other] words superfluous." Cook v. Commonwealth, 268 Va. 111, 114 (2004); see Epps v. Commonwealth, 47 Va. App. 687, 714 (2006) (*en banc*) (requiring a court to "giv[e] to every word and every part of the statute, if possible, its due effect and meaning" (quoting Posey v. Commonwealth, 123 Va. 551, 553 (1918))), aff'd, 273 Va. 410 (2007). If the meaning of a word is clear "in context," it is not ambiguous merely because it "has a variety of different definitions." Blake, 288 Va. at 382.

Finally, penal statutes are to be construed "strictly against the Commonwealth," giving defendants "the benefit of any reasonable doubt about the[ir] construction." Foley v. Commonwealth, 63 Va. App. 186, 192, 198 (2014) (quoting Harris v. Commonwealth, 274 Va. 409, 415 (2007)). "[N]evertheless[,] a defendant is not entitled to . . . an 'unreasonably restrictive interpretation of [the law].'" Grimes v. Commonwealth, 62 Va. App. 470, 480 (2013) (quoting Holloman v. Commonwealth, 221 Va. 196, 198 (1980)), aff'd, 288 Va. 314 (2014).

With regard to the statutory exemption at issue, neither the phrase "a personal, private motor vehicle" nor the individual words "personal" or "private" is defined in any of the relevant code sections. Where a "statute's terms are undefined" by the legislature, we give those terms "their 'ordinary meaning,' in light of 'the context in which [they are] used.'" Va. Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 384 (2014) (alteration in original) (quoting Lawlor

v. Commonwealth, 285 Va. 187, 237 (2013)). In ascertaining such meaning, dictionary definitions and pertinent analysis in prior case law may be consulted. See, e.g., Jones v. Commonwealth, 296 Va. 412, 415 (2018) (relying on the statutory language and a standard dictionary definition); Joseph v. Commonwealth, 64 Va. App. 332, 338-39 (2015) (relying upon multiple legal and non-legal dictionary definitions and citing Bateman v. Commonwealth, 205 Va. 595, 599-600 (1964), in which the Court "rel[ied] exclusively" on a dictionary definition); Auer, 46 Va. App. at 645-47 (relying in part on definitions in prior case decisions).

In determining the meaning of the phrase "a personal, private motor vehicle," we look first to the definition of "private," the closest modifier to the noun "vehicle." "Private" is defined in pertinent part as follows:

> 1a: intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public <a [private] park> <a [private] party>
>
> 1b: belonging to or concerning an individual person, company, or interest <our [private] goods> <[private] property> <a [private] house> <[private] means>

Private, Webster's Third New International Dictionary (2002); see City of Morgantown v. W. Va. Bd. of Regents, 354 S.E.2d 616, 618-19 (W. Va. 1987).

The appellant agrees with the first of these definitions, quoting Merriam-Webster's College Dictionary (11th ed. 2005), to assert that "private" means "intended for or restricted to the use of a particular person, group, or class." However, he further argues that "personal" is "*[s]imilarly*" defined by that dictionary as "'of, relating to, or affecting a particular person.'" (Emphasis added). He contends that both words mean merely that the statutory exemption applies "to vehicles driven by individuals for their own travel purposes, as opposed to forms of public transportation." Accordingly, the appellant asserts that the statutory exemption does not apply to "forms of public transportation . . . like city buses" but includes any "car, pickup truck,

- 6 -

van, or other type of motor vehicle" being driven by an individual "for [his] own purposes." The critical piece of his argument is his claim that the exemption applies without regard to whether the individual operating the vehicle owns it or is in lawful possession of it.

The appellant's analysis, however, by virtually equating the meaning of "personal" with "private," does not take into consideration the principle that "[w]ords in a statute should be interpreted, if possible, to avoid rendering [other] words superfluous." See Cook, 268 Va. at 114. "[T]he legislature chooses statutory language with care, and '[w]hen the General Assembly uses two different terms, [we must] presume[] the terms . . . mean two different things.'" Spratley v. Commonwealth, 69 Va. App. 314, 319-20 (2018) (quoting Brown v. Commonwealth, 284 Va. 538, 545 (2012)). In order to give this important principle full effect, the word "personal" in the phrase "a personal, private motor vehicle" must mean something different from the word "private." These are common words that should be read in light of their common meanings.

A dictionary definition of the word "personal" that goes beyond the mere equivalent of "private" means "exclusively for a given individual," as in "a [personal] letter." Webster's Third New International Dictionary, supra. Additionally, Virginia law defines "personal property" in part as that which is "subject to ownership." See Henry v. Commonwealth, 63 Va. App. 30, 43 (2014) (quoting Property, Black's Law Dictionary (9th ed. 2009) ("personal property" subheading)). These definitions support the determination that the legislature did not intend to permit one to lawfully secure a dangerous firearm in a vehicle subject to personal ownership without consideration of who the owner or authorized user of that vehicle is. Consequently, we conclude that the General Assembly, by using the adjective "personal," meant at the very least to require that the vehicle in which one secures a firearm, in addition to being a "private" or non-public one, must also be one that the person claiming the exemption lawfully possesses or

occupies.[1]  See Braddock v. State, 194 S.E.2d 317, 320 (Ga. Ct. App. 1972) (holding that where a truck's owner and his employee were riding together in the vehicle, the employee "could not reasonably think of [the truck's glove compartment] as a *personal, private* place" in which he had a reasonable expectation of privacy (emphasis added)); Villanova v. Innovative Investigations, Inc., 21 A.3d 650, 652 (N.J. Super. Ct. App. Div. 2011) (noting the trial judge's observation that "it is standard practice for law enforcement officers, while engaged in police activities, to avoid use of their *personal private* vehicles or to display any other personal identifiers" (emphasis added)); cf. Byrd v. United States, 138 S. Ct. 1518, 1529 (2018) (holding that "[a] car thief would not have a reasonable expectation of privacy in a stolen car" regardless of "the degree of possession and control").

We need not decide whether one who is merely an authorized user of a vehicle qualifies for the exemption.  Cf. Morris v. City of Va. Beach, 58 Va. App. 173, 180 (2011) (applying "best and narrowest ground" principles to hold that where one legal theory legitimized a warrantless search, the Court would not consider whether a second legal theory might also do so (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576 (2010))).  Here, the appellant was not an authorized user under the facts of this case.  To the contrary, by entering a plea of guilty to receiving stolen property, the appellant admitted that he knew the pickup truck was stolen.  See

---

[1] The Virginia case decisions cited by the appellant, which employ the adjectives "personal" and "private" jointly to modify a noun referencing a vehicle, use the terms in wholly different contexts.  See Carlton v. Boudar, 118 Va. 521, 525 (1916) (in analyzing whether a taxi company was a common carrier for purposes of tort liability, noting that "[a]n automobile may be used as a common carrier, a private carrier, or a personal private conveyance" without discussing this third term (quoting Xenophon P. Huddy, The Law of Automobiles 38 (2d ed. 1909))); Thorne v. Va. Emp't Comm'n, 5 Va. Cir. 441, 443 (1972) (in considering whether a taxi driver was an employee or independent contractor, noting that "the only fringe benefit available to [the] driver [of a taxi for Thorne's company] is the use of [the vehicle] for personal private transportation on occasion," leaving open the inference that the term implies at least authorized use); see also McGinnis v. McGinnis, 69 Va. App. 572, 580 (2018) (noting that circuit court decisions are not binding on the Court of Appeals).  Consequently, these decisions are not instructive.

Code § 18.2-108(A).  Accordingly, under the plain meaning of "personal" as used in the statutory exemption, the stolen vehicle was certainly not one intended "exclusively" for the appellant or one subject to his authorized use.

### III.  CONCLUSION

We hold that the exemption in Code § 18.2-308(C)(8) did not apply because the appellant knew that the truck in which he secured the firearm was stolen and, thus, it was not "a personal, private motor vehicle" within the meaning of the exemption.  Consequently, we affirm the appellant's conviction for violating Code § 18.2-287.4.

<u>Affirmed.</u>